# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MARTIN, Derivatively on Behalf of POWER SOLUTIONS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> KENNETH J. WINEMASTER, SHAOJUN SUN, KENNETH W. LANDINI, JIANG KUI, JASON LIN, LESLIE A. COOLIDGE, FRANK P. SIMPKINS, GARY S. WINEMASTER, MICHAEL P. LEWIS, ERIC A. COHEN, DANIEL P. GOREY, JAY J. HANSEN, MARY E. VOGT, and ELLEN R. HOFFING, <br><br> Defendants, <br><br> -and- <br><br> POWER SOLUTIONS INTERNATIONAL, INC, a Delaware corporation, <br><br> Nominal Defendant. | Case No. 18-cv-2386 <br><br><br><br> **JURY DEMAND** |

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT TO COMPEL AN ANNUAL MEETING OF STOCKHOLDERS, BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT**

Plaintiff Michael Martin, by his undersigned counsel, submits this Verified Stockholder Direct and Derivative Complaint to Compel an Annual Meeting of Stockholders, Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff which are based on personal knowledge. This complaint is also based on the investigation of Plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of new reports, press releases, and other publicly available sources.

## **INTRODUCTION**

1.     This is a stockholder direct and derivative action brought by Plaintiff on behalf of nominal defendant Power Solutions International, Inc. ("Power Solutions" or the "Company") against certain of its officers and directors directly for injunctive relief and derivatively for breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and violations of law. These wrongs resulted in hundreds of millions of dollars in damages to Power Solutions' reputation, goodwill, and standing in the business community.  Moreover, these actions have exposed the Company to hundreds of millions of dollars in potential liability for violations of state and federal law.

2.     Power Solutions designs, engineers, manufactures, and distributes emission-certified, alternatively-fueled engines and conventional power systems. The Company provides integrated turn-key solutions to leading global original equipment manufacturers ("OEMS") by customizing engines to meet its customers' specific applications and power needs.  These engines run on a variety of fuels, including natural gas, propane, biogas, diesel, gasoline, or hybrid systems.

3.     Power Solutions was founded as a private company in 1985 by defendant Gary S. Winemaster ("G. Winemaster"), the Company's former Chairman of the Board of Directors (the "Board"), President, and Chief Executive Officer ("CEO") from 2011 through April 2017.  In April 2011, the Company went public as part of a reverse merger, whereby it essentially merged into a shell corporation that was already registered for public trading.[1]  The reverse merger

---

[1] On April 29, 2011, The W Group, Inc. ("The W Group") completed a reverse merger transaction with Format, Inc. ("Format") (which is now Power Solutions), in which PSI Merger Sub, Inc. ("PSI Merger Sub"), a Delaware corporation that was newly created as a wholly-owned subsidiary of Format, merged into The W Group, and The W Group remained as the surviving corporation of the merger.  In that transaction, The W Group became a wholly-owned subsidiary of Power Solutions.

allowed Power Solutions to become publicly traded while simultaneously avoiding the increased scrutiny it would have faced if the Company went public by way of an initial public offering. From the April 2011 reverse merger through March 2017, defendant G. Winemaster together with his brother and long-time Power Solutions executive and director, defendant Kenneth J. Winemaster ("K. Winemaster"), were the Company's majority stockholders, collectively holding more than 50% of Power Solutions' stock.[2]

4.       During its first year as a public Company, Power Solutions disclosed that it was essentially in the process of building its internal controls from scratch in order to meet public company reporting obligations.  On March 12, 2013, Power Solutions filed with the SEC its Annual Report on Form 10-K for the fiscal year ended December 31, 2012 (the "2012 Form 10-K").  The 2012 Form 10-K noted that management completed its first annual assessment over financial reporting and concluded that the Company's "disclosure controls and procedures were not effective as a result of a material weakness in [Power Solutions'] internal controls over financial reporting" that "may not prevent or detect misstatements."  Nonetheless, the 2012 Form 10-K assured the investing public that management had been "actively engaged in developing and implementing a remediation plan to address the material weakness" which would purportedly "effectively remediate" the problems.

5.       Throughout much of the following year, the Company continued to warn that its internal controls were ineffective.  Despite these warnings, the Individual Defendants (as defined herein) repeatedly touted impressive sales and revenue increases, backed by "strong" and "increasing" demand for its products, while also forecasting "significant future growth."  As a

---

[2] In or about March 2017, pursuant to a stockholder purchase agreement detailed further herein, defendants G. Winemaster and K. Winemaster's collective beneficial ownership dropped to approximately 44.4% where it currently remains.

result, the market reacted highly favorably and the Company's stock price steadily skyrocketed from $16.18 per share at the beginning of 2013 to close the year at $75.10 per share, an increase of more than 464%.

6.    On February 28, 2014, the Company boasted for the first time that it had purportedly remediated its previously disclosed material weakness.  Specifically, on February 28, 2014, Power Solutions filed with the SEC its Annual Report on Form 10-K for the fiscal year ended December 31, 2013 (the "2013 Form 10-K"), which proclaimed that management's most recent assessment "concluded that *[Power Solutions'] disclosure controls and procedures were effective*" (an assessment the Individual Defendants would continue to boldly profess for the next two and a half years).  The Individual Defendants' rosy financial projections combined with the Company's assurance that it was no longer operating with a material weakness quickly drove Power Solutions' stock price to close at an impressive $84.45 per share on March 10, 2014, the week after the 2013 Form 10-K was filed.

7.    The Individual Defendants' long-touted rosy projections first began to unravel on May 7, 2015, when the Company announced strong revenues for the first quarter of 2015, but lowered its outlook for revenue growth in the second quarter.  In August 2015, the Company lowered guidance for the third and fourth quarters, and reduced guidance for the full year of 2015.   As a result of these and other disappointing earnings announcements through the remainder of 2015 and into early 2016, Power Solutions' stock price steadily dropped from $65.10 per share on May 7, 2015, to just $8.83 per share on February 23, 2016, a decline of *86.4%*.  Unfortunately, this was only the tip of the iceberg.  In fact, as would be slowly revealed by the Company between August 2016 and February 2017, Power Solutions had been operating for several years with material weaknesses in internal controls, had long been improperly

recognizing revenue, and would need to restate multiple years' worth of financial statements.

8.    The initial hints of these startling revelations first began to trickle out in early August 2016, when Power Solutions cryptically announced that the Company postponed its second quarter earnings release and conference call, and that it needed "additional time to complete its financial statements." By January 2017, the Company was forced to admit that it would need to restate its financial statements for fiscal year 2015, the second, third, and fourth quarters within 2015, and the first quarter of 2016. According to the Company, these financial statements needed to be restated to "reflect the impact of certain errors involving revenue recognition," and the errors reviewed to date included *at least $18 million* in revenue erroneously recognized in the Company's 2015 consolidated financial statements. Power Solutions further disclosed that it had been *operating with a material weakness in internal controls over financial reporting during each of the above noted periods*, and that the SEC's enforcement staff informed the Company that it was investigating, among other things, Power Solutions' revenue recognition practices. Shortly thereafter, Power Solutions' now-former independent registered public accounting firm, RSM US LLP ("RSM"), resigned, stating that *RSM could "no longer rely on management representations."*

9.    On April 7, 2017, Power Solutions acknowledged that it would also be forced to restate fiscal year 2014 and the first quarter of 2015. The Company further estimated that its restatements for 2014 through 2016 would "result in a shift of recognized revenues from prior periods to subsequent periods in the aggregate amount of approximately $48 million to $74 million." In addition, the announcement revealed that defendant G. Winemaster resigned as CEO, President, and a member of the Board.

10.    On June 9, 2017, the Company's former Chief Operating Officer, defendant Eric A. Cohen ("Cohen"), filed a whistleblower complaint against Power Solutions in this Court (the "Cohen Complaint").   The Cohen Complaint alleges that defendant Cohen was improperly terminated by Power Solutions "in direct response to his reports of the Company's violations of U.S.   Generally Accepted Accounting Principles ("GAAP"), [Sarbanes-Oxley Act of 2002 ("SOX")], and federal securities laws and rules prohibiting securities and accounting fraud."  The Cohen Complaint also states that in early 2016, defendant Cohen repeatedly furnished reports of such wrongdoing to defendant G. Winemaster, the Company's Board, and the Audit Committee of the Board, among other Power Solutions executives and fiduciaries, but that the Individual Defendants refused to act and instead continued to publicly misrepresent the Company's revenues.  In addition, the Cohen Complaint identifies numerous specific transactions in which Power Solutions improperly recognized revenue over the years, primarily through a "pull-forward" revenue recognition scheme that wrongfully recorded revenue in earlier periods before the criteria for revenue recognition were satisfied, in violation of GAAP, SEC rules, and the Company's own stated revenue recognition policies.

11.    As the Company now admits, ***several years' worth of Power Solutions' SEC filings "should no longer be relied upon"*** due to the variety of misstatements described therein. Further, Power Solutions has not timely filed and is currently incapable of filing its Annual Report on Form 10-K for the fiscal year ended December 31, 2016.  Additionally, the Company has not filed its Quarterly Reports on Forms 10-Q since May 10, 2016.  To add insult to injury, in violation of title 8, section 211 of the Delaware General Corporations Law Code ("Section 211"), the Board has utterly failed to ensure that Power Solutions has held an Annual Meeting of Stockholders to elect directors within the last twenty-two months, and during this time period

there has been no action by written consent to elect Power Solutions directors in lieu of an Annual Meeting.

12.    The Individual Defendants' faithless actions and repeated improper statements have devastated Power Solutions' credibility as reflected by the Company's more than ***$841 million***, or ***92% market capitalization loss*** from a high of $913.2 million in May 2014, to less than $72 million at present.

13.    Further, as a direct result of this unlawful course of conduct, the Company is now the subject of at least one consolidated federal securities class action complaint filed in the U.S. District Court for the Northern District of Illinois on behalf of investors who purchased Power Solutions' shares (the "Securities Class Action").  The Securities Class Action brings claims against Power Solutions and certain of the Individual Defendants in connection with the Company's misleading statements, GAAP violations, and improper revenue recognition, including causes of action under sections 10(b), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

14.    Because of the violation of Section 211, the Company's stockholders have been unable to voice their frustrations at an Annual Meeting or by withholding their votes for these faithless fiduciaries.  Plaintiff brings this action against the Individual Defendants to repair the harm that they caused with their faithless actions.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1332 in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive

action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

16.     This Court also has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because: (i) Power Solutions maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Power Solutions, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

18.     Plaintiff Michael Martin was a stockholder of Power Solutions at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Power Solutions stockholder.  Plaintiff is a citizen of Tennessee.

**Nominal Defendant**

19.     Nominal defendant Power Solutions is a Delaware corporation with principal executive offices located at 201 Mittel Drive, Wood Dale, Illinois.   Accordingly, Power

Solutions is a citizen of Delaware and Illinois. The Company designs, engineers, manufactures, and distributes power systems for OEMs of off-highway industrial equipment, certain on-road vehicles, and large custom-engineered integrated electrical power generation systems. As of February 22, 2016, the Company had approximately 819 employees. Prior to their incorporation in 2001, Power Solutions' parent operating company was Power Great Lakes, Inc. ("Power Great Lakes"), which is now a wholly-owned subsidiary.

**Defendants**

20.     Defendant K. Winemaster is Power Solutions' Senior Vice President and has been since 2001. Defendant K. Winemaster was also Power Solutions' Secretary from 2001 to July 2013 and a director from 2001 to November 2011. Defendant K. Winemaster and defendant G. Winemaster are brothers. Defendant K. Winemaster knowingly, recklessly, or with gross negligence: (i) failed to ensure a proper tone at the top; (ii) caused or allowed Power Solutions to improperly record revenue in violation of GAAP and the Company's own policies for years; (ii) caused or allowed the Company to misstate its revenue for years; (iii) caused or allowed the Company to operate with inadequate financial, internal, and disclosure controls for years; (iv) caused or allowed the Company to make improper statements in its press releases and SEC filings concerning Power Solutions' financial prospects and internal and disclosure controls; (v) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (vi) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting. Power Solutions paid defendant K. Winemaster the following compensation as an executive:

| Year | Salary | Bonus | All Other Compensation | Total |
|---|---|---|---|---|
| 2015 | $272,500 | - | $40,218 | $312,718 |
| 2014 | $272,500 | $170,000 | $33,367 | $475,867 |

Defendant K. Winemaster is a citizen of Illinois.

21.     Defendant Shaojun Sun ("Sun") is Power Solutions' Chairman of the Board and a director and has been since April 2017.  Defendant Sun was also a member of Power Solutions' Compensation Committee in at least April 2017.  Defendant Sun knowingly or recklessly: (i) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (ii) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting.  Defendant Sun is a citizen of Shandong Province, China.

22.     Defendant Kenneth W. Landini ("Landini") is a Power Solutions director and has been since 2001.  Defendant Landini was also Power Solutions' Lead Outside Director from at least August 2012 to at least March 2016.  Defendant Landini was Power Great Lakes' Vice President of Finance from December 1985 to March 1988.  Defendant Landini knowingly or recklessly: (i) failed to ensure a proper tone at the top; (ii) caused or allowed Power Solutions to improperly record revenue in violation of GAAP and the Company's own policies for years; (ii) caused or allowed the Company to misstate its revenue for years; (iii) caused or allowed the Company to operate with inadequate financial, internal, and disclosure controls for years; (iv) caused or allowed the Company to make improper statements in its press releases and SEC filings concerning Power Solutions' financial prospects and internal and disclosure controls; (v) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (vi) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting.  Defendant Landini is a citizen of Michigan.

23.     Defendant Jiang Kui ("Kui") is a Power Solutions director and has been since April 2017.  Defendant Kui was also a member of Power Solutions' Compensation Committee in at least April 2017.  Defendant Kui knowingly or recklessly: (i) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (ii) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting.  Defendant Kui is a citizen of Shandong Province, China.

24.     Defendant Jason Lin ("Lin") is a Power Solutions director and has been since May 2017.  Defendant Lin was also a member of Power Solutions' Audit Committee in at least July 2017.  Defendant Lin knowingly or recklessly: (i) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (ii) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting.  Defendant Lin is a citizen of Illinois.

25.     Defendant Leslie A. Coolidge ("Coolidge") is a Power Solutions director and has been since July 2017.  Defendant Coolidge was also the Chairman of Power Solutions' Audit Committee and a member of that committee in at least July 2017.  Defendant Coolidge knowingly or recklessly: (i) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (ii) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting. Defendant Coolidge is a citizen of Illinois.

26.     Defendant Frank P. Simpkins ("Simpkins") is a Power Solutions director and has been since July 2017.  Defendant Simpkins was also a member of Power Solutions' Audit Committee in at least July 2017.  Defendant Simpkins knowingly or recklessly: (i) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (ii)

failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting. Defendant Simpkins is a citizen of Pennsylvania.

27. Defendant G. Winemaster was Power Solutions' Chairman of the Board from April 2011 to April 2017 and Chief Executive Officer, President and director from 2001 to April 2017. Defendant G. Winemaster cofounded the Company in 1985. Defendant G. Winemaster and defendant K. Winemaster are brothers. Defendant G. Winemaster was also Power Great Lakes' CEO and President from 1992 to 2001. Pursuant to a Strategic Collaboration Agreement with Weichai Power Co., Ltd., defendant G. Winemaster transitioned to a nonexecutive role as Chief Strategy Officer, effective April 6, 2017. Defendant G. Winemaster knowingly, recklessly, or with gross negligence: (i) failed to ensure a proper tone at the top; (ii) caused or allowed Power Solutions to improperly record revenue in violation of GAAP and the Company's own policies for years; (ii) caused or allowed the Company to misstate its revenue for years; (iii) caused or allowed the Company to operate with inadequate financial, internal, and disclosure controls for years; (iv) caused or allowed the Company to make improper statements in its press releases and SEC filings concerning Power Solutions' financial prospects and internal and disclosure controls; (v) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (vi) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting. Power Solutions paid defendant G. Winemaster the following compensation as an executive:

| Year | Salary | Bonus | All Other Compensation | Total |
|------|--------|-------|------------------------|-------|
| 2015 | $540,000 | - | $57,047 | $597,047 |
| 2014 | $540,000 | $380,000 | $50,950 | $970,950 |

Defendant G. Winemaster is a citizen of Illinois.

28.     Defendant Michael P. Lewis ("Lewis") was Power Solutions' Chief Financial Officer ("CFO") from October 2015 to March 2017.  Defendant Lewis is named as a defendant in the related Securities Class Action that alleges he violated sections 10(b) and 20(a) of the Exchange Act.  Defendant Lewis knowingly, recklessly, or with gross negligence: (i) failed to ensure a proper tone at the top; (ii) caused or allowed Power Solutions to improperly record revenue in violation of GAAP and the Company's own policies for years; (ii) caused or allowed the Company to misstate its revenue for years; (iii) caused or allowed the Company to operate with inadequate financial, internal, and disclosure controls for years; (iv) caused or allowed the Company to make improper statements in its press releases and SEC filings concerning Power Solutions' financial prospects and internal and disclosure controls; (v) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (vi) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting.  Power Solutions paid defendant Lewis the following compensation as an executive:

| Year | Salary | Stock Awards | All Other Compensation | Total |
|------|--------|--------------|------------------------|-------|
| 2015 | $66,667 | $777,600 | $17,814 | $862,081 |

Defendant Lewis is a citizen of Illinois.

29.     Defendant Cohen was Power Solutions' Chief Operating Officer from April 2012 to May 2016.  Defendant Cohen knowingly, recklessly, or with gross negligence: (i) failed to ensure a proper tone at the top; (ii) caused or allowed Power Solutions to improperly record revenue in violation of GAAP and the Company's own policies for years; (ii) caused or allowed the Company to misstate its revenue for years; (iii) caused or allowed the Company to operate with inadequate financial, internal, and disclosure controls for years; (iv) caused or allowed the Company to make improper statements in its press releases and SEC filings concerning Power

Solutions' financial prospects and internal and disclosure controls; (v) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (vi) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting. Power Solutions paid defendant Cohen the following compensation as an executive:

| Year | Salary | Bonus | All Other Compensation | Total |
|------|--------|-------|------------------------|-------|
| 2015 | $500,000 | - | $13,350 | $513,350 |
| 2014 | $500,000 | $100,000 | $13,517 | $613,517 |

Defendant Cohen is a citizen of Illinois.

30. Defendant Daniel P. Gorey ("Gorey") was Power Solutions' CFO from April 2012 to October 2015 and Senior Vice President of Finance from July 2011 to March 2012. Defendant Gorey is named as a defendant in the related Securities Class Action that alleges he violated sections 10(b) and 20(a) of the Exchange Act. Defendant Gorey knowingly, recklessly, or with gross negligence: (i) failed to ensure a proper tone at the top; (ii) caused or allowed Power Solutions to improperly record revenue in violation of GAAP and the Company's own policies for years; (ii) caused or allowed the Company to misstate its revenue for years; (iii) caused or allowed the Company to operate with inadequate financial, internal, and disclosure controls for years; (iv) caused or allowed the Company to make improper statements in its press releases and SEC filings concerning Power Solutions' financial prospects and internal and disclosure controls; (v) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (vi) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting. Power Solutions paid defendant Gorey the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | All Other Compensation | Total |
|------|--------|-------|--------------|------------------------|-------|
| 2015 | $289,808 | - | $26,401 | $30,642 | $346,851 |
| 2014 | $285,000 | $200,000 | - | - | $485,000 |

Defendant Gorey is a citizen of Illinois.

31.     Defendant Jay J. Hansen ("Hansen") was a Power Solutions director from October 2011 to May 2017.  Defendant Hansen was also the Chairman of Power Solutions' Audit Committee and a member of that committee and the Compensation Committee from at least August 2013 to at least March 2016.  Defendant Hansen knowingly or recklessly: (i) failed to ensure a proper tone at the top; (ii) caused or allowed Power Solutions to improperly record revenue in violation of GAAP and the Company's own policies for years; (ii) caused or allowed the Company to misstate its revenue for years; (iii) caused or allowed the Company to operate with inadequate financial, internal, and disclosure controls for years; (iv) caused or allowed the Company to make improper statements in its press releases and SEC filings concerning Power Solutions' financial prospects and internal and disclosure controls; (v) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (vi) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting.  Defendant Hansen is a citizen of Michigan.

32.     Defendant Mary E. Vogt ("Vogt") was a Power Solutions director from November 2011 to May 2017.  Defendant Vogt was also the Chairman of Power Solutions' Compensation Committee and a member of that committee and the Audit Committee from at least August 2013 to at least March 2016.  Defendant Vogt knowingly or recklessly: (i) failed to ensure a proper tone at the top; (ii) caused or allowed Power Solutions to improperly record revenue in violation of GAAP and the Company's own policies for years; (ii) caused or allowed the Company to misstate its revenue for years; (iii) caused or allowed the Company to operate

with inadequate financial, internal, and disclosure controls for years; (iv) caused or allowed the Company to make improper statements in its press releases and SEC filings concerning Power Solutions' financial prospects and internal and disclosure controls; (v) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (vi) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting. Defendant Vogt is a citizen of Illinois.

33. Defendant Ellen R. Hoffing ("Hoffing") was a Power Solutions director from September 2015 to May 2017. Defendant Hoffing was also a member of Power Solutions' Audit Committee from September 2015 to at least March 2016. Defendant Hoffing knowingly or recklessly: (i) failed to ensure a proper tone at the top; (ii) caused or allowed Power Solutions to improperly record revenue in violation of GAAP and the Company's own policies for years; (ii) caused or allowed the Company to misstate its revenue for years; (iii) caused or allowed the Company to operate with inadequate financial, internal, and disclosure controls for years; (iv) caused or allowed the Company to make improper statements in its press releases and SEC filings concerning Power Solutions' financial prospects and internal and disclosure controls; (v) failed to ensure the timely and accurate filing of Power Solutions' Annual and Quarterly Reports; and (vi) failed to ensure Power Solutions held its most recent Annual Meeting of Stockholders within thirteen months of the previous Annual Meeting. Defendant Hoffing is a citizen of Illinois.

34. The defendants identified in ¶¶20, 27-30 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶20-27, 31-33 are referred to herein as the "Director Defendants." The defendants identified in ¶¶31-33 are referred to herein as the "Audit Committee Defendants." Collectively, the defendants identified in ¶¶20-33 are referred to herein

as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

35.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe Power Solutions and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Power Solutions in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Power Solutions and not in furtherance of their personal interest or benefit.

36.     To discharge their duties, the officers and directors of Power Solutions were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Power Solutions were required to, among other things:

(a)     ensure the Company maintained adequate internal controls;

(b)     ensure the Company acted in accordance with GAAP;

(c)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(d)     remain informed as to how Power Solutions conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

37.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Power Solutions, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

38.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to operate with inadequate internal controls, misrepresent its revenues for years in violation of GAAP, and pay improper compensation packages to certain defendants, improper practices that wasted the Company's assets, and caused Power Solutions to incur substantial damage.

39.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Power Solutions, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, Power Solutions has expended, and will continue to expend, significant sums of money.

**Additional Duties of the Audit Committee Defendants**

40.     In addition to these duties, under the Audit Committee Charter, adopted in January 2012, the Audit Committee Defendants, defendants Hansen, Hoffing, and Vogt, owed specific duties to Power Solutions to assist the Board in overseeing "the integrity of the Company's financial statements," "the Company's Compliance with legal and regulatory requirements," and "the Company's internal accounting and financial reporting controls."  The

Audit Committee Charter further provides that the Audit Committee Defendants were required to:

**2. Internal Controls and Compliance Oversight.**

**(a) Review of Internal Controls and Accounting/Financial Resources.** The Committee shall review and discuss with the Auditors, financial and accounting personnel and the internal auditors (if applicable) (i) the quality and depth of staffing in, and resources of, the Company's accounting, information services and financial departments, as needed, and (ii) the adequacy of the Company's internal control over financial reporting and disclosure controls and procedures, including controls and security procedures with respect to the Company's information systems and the Company's process for assessing risk of fraudulent financial reporting and detecting major control weaknesses, and any related significant findings and recommendations of the Auditors and the internal auditors (if applicable) (e.g., regarding deficiencies, significant deficiencies or material weaknesses), together with management's responses thereto, and the adequacy of disclosures about changes in internal control over financial reporting. The Committee shall also review with the Auditors, the internal auditors (if applicable) and management the extent to which changes or improvements in financial or accounting practices, as approved by the Committee, have been implemented.

**(b) Management's Internal Controls Report.** The Committee shall review and discuss with the Auditors and management the report of management on the Company's internal control over financial reporting to be included when required in the Company's Annual Report on Form 10-K prior to filing such Annual Report on Form 10-K with the SEC.

**(c) Submission of Complaints.** The Committee shall establish procedures for (1) the receipt, retention, and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, (2) the confidential, anonymous submission by the Company's employees of concerns regarding questionable accounting or auditing matters, and (3) the dissemination of the procedures developed pursuant to clause (2) above in a manner reasonably calculated to make them known to all Company employees. The Committee shall monitor and promote the Company's adherence to these procedures.

**(d) Financial Risk Exposure and General Compliance.** The Committee shall discuss and review with management the Company's major financial risk exposure and the steps management takes to implement plans to monitor and mitigate such risks, including risk assessment and management policies. Such risks and exposures include, but are not limited to, threatened and pending litigation, claims against the Company, any published reports that raise material issues regarding the Company's financial statements or accounting policies, tax matters, legal and regulatory compliance and correspondence between the

Company and any regulatory or governmental authorities, and matters that could materially impact the Company's internal control over financial reporting, disclosure controls and procedures and financial reporting. The Committee shall review the Company's procedures for monitoring compliance with laws and regulations; as well as the Company's code of conduct and other policies relating to compliance with laws and regulations, throughout the Company.

\* \* \*

### 3. Financial Reporting.

**(a) Financial Statement Review.** The Committee shall review and discuss with management and the Auditors the Company's annual audited and quarterly unaudited financial statements, including the Auditors' audit reports and the results of the Auditors' review of the quarterly financial statements (as applicable), as well as the related "Management's Discussion and Analysis of Financial Condition and Results of Operations," in each case prior to filing the financial statements with the SEC. The Committee shall recommend to the Board whether the annual financial statements should be included in the Company's Annual Report on Form 10-K filed with the SEC. The Committee shall also authorize the filing by the Company of each Annual Report on Form 10-K and each Quarterly Report on Form 10-Q containing the Company's financial statements.

**(b) Earnings Release Review.** Prior to their release, the Committee shall review all of the Company's earnings releases.

**(c) Disclosure Principles and Practices**. The Committee shall discuss with the Auditors their judgments about the quality, not just the acceptability, of the Company's accounting principles and financial disclosure practices used or proposed and the appropriateness of significant management judgments. The Committee shall discuss with the Auditors and management the effect of regulatory and accounting initiatives, as well as any off-balance sheet structures, on the Company's financial statements.

**(d) Fraud Certification Disclosures.** The Committee shall review and discuss disclosures made to the Committee by the Company's chief executive officer and chief financial officer during the certification process for the Company's Annual Reports on Form 10-K and Quarterly Reports on Form 10-Q about the effectiveness of the Company's disclosure controls and procedures, any significant deficiencies or material weaknesses in the design or operation of internal control over financial reporting and any fraud involving management or other employees having a significant role in the Company's internal control over financial reporting.

**(e) Audit Committee Report.** Based upon discussions with, and reliance upon, the Auditors and management, the Committee shall annually review and approve

the report required by SEC rules to be included in the Company's annual proxy statement. In addition, the Committee will review any other audit committee-related disclosure in the Company's filings with the SEC or otherwise as required by applicable securities laws, rules and regulations or, if the Company's securities have become listed on a national securities exchange, by the rules of such exchange.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

41.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

42.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including stockholders of Power Solutions, regarding Power Solutions' revenues and the Individual Defendants' management of Power Solutions' operations; and (ii) enhance the Individual Defendants' executive and directorial positions at Power Solutions and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

43.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct. During this time, the Individual Defendants caused the Company to issue improper financial statements.

44.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust

enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

45.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

46.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## OVERVIEW OF POWER SOLUTIONS' BUSINESS AND OPERATIONS

47.     Power Solutions designs, engineers, manufactures, and distributes emission-certified, alternatively-fueled engines and conventional power systems.  The Company customizes clean, high-performance engines designed to run on a wide variety of fuels, and provides so-called turn-key solutions to leading global OEMs in the industrial and on-road markets.

48.     Power Solutions became a publicly traded company upon completion of a reverse merger in April 2011.  In particular, on April 29, 2011, The W Group completed a reverse acquisition transaction with Format (which is now Power Solutions), in which Power Solutions Merger Sub, a Delaware corporation that was newly created as a wholly-owned subsidiary of Format, merged into The W Group, and The W Group remained as the surviving corporation of

the merger.  In that transaction, The W Group became a wholly-owned subsidiary of Power Solutions.

49.     The reverse merger allowed the Company to avoid the increased regulatory scrutiny it would have faced if the Company went public by way of an initial public offering. Immediately following the reverse merger, the Company's founder, defendant G. Winemaster, together with his brother, defendant K. Winemaster, became the Company's majority stockholders, collectively holding more than 50% of Power Solutions' stock.

## FROM THE OUTSET, POWER SOLUTIONS STRUGGLES TO IMPLEMENT ADEQUATE INTERNAL CONTROLS

50.     Following the reverse merger, the Company disclosed that it was in the process of building and enhancing its internal controls, and noted that the appropriateness of such controls would be more fully assessed at the end of the next fiscal year.  Nonetheless, the Company stated that its then CEO and CFO, defendants G. Winemaster and Gorey, respectively, had concluded that Power Solutions' disclosure controls and procedures were effective.  Specifically, as stated in Power Solutions' Annual Report on Form 10-K for the fiscal year ended December 31, 2011, filed with the SEC on March 30, 2012:

**Item 9A. Controls and Procedures.**

**Disclosure Controls and Procedures**

As a result of the reverse recapitalization, Power Solutions International, Inc. succeeded to the business of The W Group. Since the consummation of the reverse recapitalization, we have not been engaged in the business or operations conducted by Format prior to the reverse recapitalization. Accordingly, we do not in any way maintain the disclosure controls and procedures or the internal control over financial reporting of Format in effect prior to the reverse recapitalization, and such disclosure controls and procedures and internal control over financial reporting of Format are not relevant to us.

Prior to the consummation of the reverse recapitalization, The W Group was a private operating company and, as a result of the reverse recapitalization, we became a public company subject to public company reporting obligations. As a

result, *we have had to, and we currently continue to, enhance and supplement our internal accounting resources with additional accounting and finance personnel with the requisite technical and public company experience and expertise, and more generally strengthen our disclosure controls and procedures and our internal control over financial reporting to enable us to accurately and timely prepare our consolidated financial statements and otherwise satisfy these reporting obligations.* In particular, in June 2011, we established a disclosure and compliance committee (the "Disclosure Committee"), consisting of senior members of our finance and accounting department and other members of senior management, and adopted disclosure and compliance committee guidelines. The purpose of the Disclosure Committee is to assist our Chief Executive Officer, our Chief Financial Officer and our board of directors in compliance with the rules and regulations of the Securities and Exchange Commission, with particular focus on our reporting and public disclosure requirements under the Exchange Act and the Sarbanes-Oxley Act of 2002, as well as assisting our Chief Executive Officer and our Chief Financial Officer in fulfilling their obligations pursuant to Sections 302, 404 and 906 of the Sarbanes-Oxley Act of 2002. During the fiscal year ended December 31, 2011, we also retained additional staff in our finance and accounting department, and on July 18, 2011 we hired an additional senior financial professional with prior public company experience, thereby further strengthening the overall capabilities of our finance and accounting department. In August 2011, we created an internal accounting department and hired an internal audit manager with prior experience implementing and evaluating our compliance with Sarbanes-Oxley Act of 2002.

Because The W Group was a private operating company prior to the reverse recapitalization and we do not in any way maintain the internal control over financial reporting of Format in effect prior to the reverse recapitalization, *we have not yet (as we are not yet required to have) performed an annual assessment of the effectiveness of our internal control over financial reporting pursuant to Section 404 of the Sarbanes-Oxley Act of 2002*. Furthermore, as a smaller reporting company, we are not subject to the requirement that we provide an attestation report of our auditors on our internal control over financial reporting, and we will not be subject to such requirement until we become either an accelerated filer or a large accelerated filer. *We intend to perform an assessment of our internal control over financial reporting pursuant to Section 404 of the Sarbanes-Oxley Act of 2002 as of the end of our fiscal year ending December 31, 2012 and include the results in our annual report on Form 10-K for such fiscal year*. Any such annual assessment could identify significant deficiencies or material weaknesses in our internal control over financial reporting, and we cannot provide any assurances that we will be successful in remediating any deficiencies or weaknesses that may be identified.

We carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of

the end of the period covered by this annual report. Our disclosure controls and procedures are designed to provide reasonable assurance that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported accurately and within the time frames specified in the SEC's rules and forms and that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. Based on such evaluation, *our Chief Executive Officer and our Chief Financial Officer have concluded that our disclosure controls and procedures were effective as of December 31, 2011 at the reasonable assurance level, even though, following the reverse recapitalization, we and our internal auditors have not yet consummated any annual assessment of our internal control over financial reporting procedures pursuant to Section 404 of the Sarbanes-Oxley Act of 2002.* Our Chief Executive Officer and Chief Financial Officer reached this conclusion based in large part on their assessment of (1) the financial expertise of our Chief Financial Officer, and other members of our finance and accounting department and the members of the Disclosure Committee, (2) the regular communications among such persons, including the members of the Disclosure Committee, and between them and others within our relatively small organization, with respect to all material developments in our business, and (3) the overall process of preparation and review of our financial and other disclosures.

51.     The following year, on March 12, 2013, Power Solutions filed with the SEC its 2012 Form 10-K.  The 2012 Form 10-K stated that management had conducted its first annual assessment over Power Solutions financial reporting, and concluded that the Company's "disclosure controls and procedures were not effective as a result of a material weakness in [Power Solutions'] internal controls over financial reporting" that "may not prevent or detect misstatements."  Nonetheless, the 2012 Form 10-K assured that management had been "actively engaged in developing and implementing a remediation plan to address the material weakness" which would purportedly "effectively remediate" the problems, including by increasing security measures with respect to the Company's business system software and implementing a database monitoring tool to effectively monitor key transactions within the software.  The 2012 Form 10-K further touted that the Company was well positioned "to capitalize on developing trends in the industrial OEM markets and drive significant future growth."

52.     From March 2013 through early 2014, the Company continued to warn in its Quarterly Reports on Forms 10-Q that Power Solutions' internal controls were not yet deemed effective.  These same Forms 10-Q and other announcements from the Company nonetheless continued to highlight impressive sales and revenues increases, backed by "strong" and "increasing" demand for Power Solutions' products.  As a result of these continuing impressive growth predictions, Power Solutions' stock price steadily soared throughout 2013, starting the year at $16.18 per share and finishing at $75.10 per share at the end of the year, an increase of more than 464%.

### THE INDIVIDUAL DEFENDANTS ANNOUNCE PURPORTEDLY SUCCESSFUL REMEDIATION OF THE COMPANY'S PROBLEMS WITH ITS INTERNAL CONTROLS AND CONTINUE TO TOUT STRONG SALES AND CONTINUING GROWTH

53.     As detailed below, beginning in early 2014, Power Solutions purportedly remedied its long-standing problems with its internal controls.  For the next two and a half years through the second half of 2016, the Individual Defendants repeatedly boasted that the Company's "disclosure controls and procedures were effective," while also highlighting Power Solutions' purportedly impressive sales and revenue growth.  As the Company was ultimately forced to admit, all of these statements were woefully inaccurate.  Indeed, the Company continued to operate with a material weakness in financial controls and improperly recognized revenue throughout this time.

54.     On February 27, 2014, Power Solutions issued a press release announcing its fourth quarter and full year 2013 financial results.  The press release proclaimed that the Company experienced "solid performance" in the fourth quarter, with a net sales increase of 17% for the fourth quarter of 2013 compared to the same quarter in 2012, and further stated that the quarter "capped a very successful year," with a full year sales increase of 18% compared to 2012.

55.     The next day, on February 28, 2014, Power Solutions filed its 2013 Form 10-K with the SEC, signed by Officer Defendants G. Winemaster and Gorey, and Director Defendants G. Winemaster, Landini, Hansen, and Vogt, with signed certifications by defendants G. Winemaster and Gorey pursuant to SOX.  The 2013 Form 10-K misleadingly claimed that the Company had "remediated the previously identified material weakness," that Power Solutions' controls and procedures were "designed to ensure that information required to be disclosed in [SEC filings was adequate]," and that the Company's "internal control over financial reporting was effective."  The 2013 Form 10-K also claimed the Company's financial statements were performed in accordance with GAAP.  The 2013 Form 10-K stated:

**Disclosure Controls and Procedures**

***We maintain a system of disclosure controls and procedures that is designed to ensure that information required to be disclosed in the reports that we file or submit under the Securities Exchange Act of 1934 as amended (the "Exchange Act") is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the Securities and Exchange Commission***, and that such that information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure.

As of the end of the period covered by this report and pursuant to Rule 13a-15(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), our management, including the Chief Executive Officer and Chief Financial Officer, conducted an evaluation of the effectiveness and design of our disclosure controls and procedures (as that term is defined in Rule 13a-15(b) of the Exchange Act). Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that ***our disclosure controls and procedures were effective, as of the end of the period covered under this report***.

**Management's Report on Internal Control Over Financial Reporting**

Management is responsible for establishing and maintaining adequate internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) of the Securities Exchange Act of 1934, as amended. Internal control over financial reporting is a process designed by, or under the supervision of the Chief Executive Officer and Chief Financial Officer, or persons performing similar functions, and effected by our board of directors, management, and other personnel to provide reasonable assurance regarding the reliability of financial

reporting and the *preparation of the financial statements for external purposes in accordance with United States generally accepted accounting principles ("U.S. GAAP")*. Internal control over financial reporting includes those policies and procedures that:

- Pertain to the maintenance of records that, in reasonable detail, accurately reflect our transactions and dispositions of assets.

- Provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. GAAP and that our receipts and expenditures are made in accordance with authorization of our management and our board or directors.

- Provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of our assets that could have a material effect on our consolidated financial statements.

Under the supervision of our Chief Executive Officer and Chief Financial Officer, our management conducted an assessment of the effectiveness of our internal control over financial reporting as of December 31, 2013, based on criteria established in the framework in the Internal Control-Integrated Framework (1992) issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"). Based on this assessment, our management has concluded that *as of December 31, 2013, our internal control over financial reporting was effective* based on those criteria. Management reviewed the results of its assessment with our Audit Committee. The effectiveness of our internal control over financial reporting as of December 31, 2013 has been reviewed by McGladrey LLP, an independent registered public accounting firm, as stated in its attestation report which is included in this Annual Report on Form 10-K.

**Changes In Internal Control Over Financial Reporting**

During the fiscal quarter ended December 31, 2013, *we implemented internal control procedures to address a previously identified material weakness related to the business system software used within our aftermarket parts group*. These internal controls included (a) assigning detailed security rights to the software including periodic password changes, and (b) implementing a database monitoring tool to monitor key transactions within the software. After completing our testing of design and operating effectiveness of these new procedures, we concluded that *we had remediated the previously identified material weakness as of December 31, 2013*.

56.     With the Company now backed by continued promises of growth and purportedly sound internal controls, Power Solutions' stock price rose to an impressive all-time high of $84.45 per share on March 10, 2014, the week after the 2013 Form 10-K was filed.

57.     On April 1, 2014, Power Solutions announced that it acquired Professional Power Products, Inc. ("3PI") for $46 million in cash, the Company's largest acquisition to date. According to the announcement, in 2013, 3PI generated net sales and operating income of approximately $40.3 million and $7.9 million, respectively, and the transaction was "expected to be accretive to the Company's results in 2014." Defendant G. Winemaster further proclaimed in the announcement that 3PI brought Power Solutions a "talented management team," and would "broaden[] the Company's product offerings and is expected to accelerate growth with both new and existing customers globally."

58.     On May 8, 2014, Power Solutions issued a press release announcing its first quarter 2014 financial results. The press release stated that for the first quarter, Power Solutions experienced an impressive 27% increase in net sales compared to the same quarter in 2013, and a 9% sequential increase from the fourth quarter of 2013. Defendant G. Winemaster boasted that the Company's products "continued to drive growth for [Power Solutions]," and stated that the Company's recent 3PI acquisition "creates a tremendous combination that should position us well for growth in the years ahead."

59.     On May 9, 2014, Power Solutions filed its Quarterly Report on Form 10-Q for the first quarter ended March 31, 2014, with the SEC. The Form 10-Q reaffirmed the above announced financial results and claimed that the Company's "disclosure controls and procedures were effective."

60.     On August 7, 2014, the Company issued a press release announcing its second quarter 2014 results. The Company reported net sales of $83,378,000, an increase of 41% compared to the second quarter of 2013 and a 25% sequential increase compared to the first quarter of 2014.

61.     On August 8, 2014, Power Solutions filed its Quarterly Report on Form 10-Q for the second quarter ended June 30, 2014, with the SEC.  The Form 10-Q reaffirmed the above announced financial results and reassured the market that the Company's "disclosure controls and procedures were effective."

62.     On November 6, 2014, the Company issued a press release announcing its third quarter 2014 results.  The Company reported net sales of $93,972,000, an increase of 45% from $64,628,000 in the third quarter of 2013, and a 13% sequential increase from $83,378,000 in the second quarter of 2014.  Defendant G. Winemaster proclaimed in the press release that the results purportedly "demonstrate[d] the resilience of [the Company's] business model and market opportunities," and that "[s]olid demand across [Power Solutions'] end-markets drove strong sales growth and attractive gross margin expansion."

63.     On November 7, 2014, Power Solutions filed its Quarterly Report on Form 10-Q for the third quarter ended September 30, 2014, with the SEC.  The Form 10-Q reaffirmed the above announced financial results and again assured that the Company's "disclosure controls and procedures were effective."

64.     On February 26, 2015, the Company issued a press release announcing its fourth quarter and full year 2014 financial results.  For the fourth quarter, the Company announced net sales of $103,910,000, an increase of 69% from the fourth quarter of 2013 and an 11% sequential increase from the third quarter of 2014.  For the full year, the press release touted net sales of $347,995,000, astonishing increase of 46%, from 2013.

65.     On March 13, 2015, Power Solutions filed with the SEC its Annual Report on Form 10-K for the fiscal year ended December 31, 2014 (the "2014 Form 10-K"), signed by Officer Defendants G. Winemaster and Gorey, and Director Defendants G. Winemaster, Landini,

Hansen, and Vogt, with signed SOX certifications by defendants G. Winemaster and Gorey. The 2014 Form 10-K reaffirmed the above announced financial results and again reassured the market that the Company's "disclosure controls and procedures were effective." Further, the 2014 Form 10-K misrepresented the Company's revenue recognition controls, claiming that revenue was recorded in the proper quarter as appropriate, stating:

> *Revenue recognition*
>
> We recognize revenue upon transfer of title and risk of loss to the customer, which is typically when products are shipped, provided there is persuasive evidence of an arrangement, the sales price is fixed or determinable and management believes collectability is reasonably assured. As of December 31, 2014, we had recognized revenue associated with approximately $3.2 million of undelivered product. We anticipate the collection of any unpaid balances during 2015. We did not enter into any bill and hold arrangements during 2013 or 2012.

### THE COMPANY BEGINS TEMPERING GROWTH PREDICITIONS AS IT STRUGGLES TO KEEP UP WITH THE IMPROPER <u>REVENUE RECOGNITION SCHEME</u>

66.     Throughout the remainder of 2015, Power Solutions disclosed a series of disappointing earnings announcements and lowered expected projections. Unbeknownst to the public, as discussed *supra*, the situation was much worse than a mere slowdown in demand. Rather, the Company was internally struggling to keep up with its longstanding and improper "pull-forward" revenue recognition scheme.

67.     On May 7, 2015, Power Solutions issued a press release announcing its first quarter 2015 results. For the quarter, the Company reported net sales of $86,139,000, an increase of 29% from the first quarter of 2014. Further, although Power Solutions "raised its outlook for full-year 2015 sales growth," the press release noted the Company expected "second quarter 2015 revenue to grow modestly compared to second quarter 2014, and to be in a range similar to first quarter 2015."

68.     On May 8, 2015, Power Solutions filed its Quarterly Report on Form 10-Q for the first quarter ended March 31, 2015, with the SEC.  The Form 10-Q reaffirmed the above announced financial results reasserted that the Company's "disclosure controls and procedures were effective."

69.     The May 7, 2015 press release provided the market with the first indication that the Individual Defendants' repeated growth projections might not have been as rosy as previously touted.  On this news, Power Solutions' stock fell 13% between May 7, 2015 and May 12, 2015, from $65.10 per share to $56.64 per share, respectively.

70.     On August 5, 2015, the Company issued a press release announcing its second quarter 2015 results.  The Company reported net sales of $94,629,000, an increase of 13% from the second quarter of 2014.  For the first time, the press release lowered guidance, stating it now expected third quarter 2015 revenue to be in the range of $110 million to $130 million, and fourth quarter revenue to be in the range of $140 million to $160 million.  In part, the Company blamed the full year guidance reduction on a "slower than expected recovery at the 3PI subsidiary."

71.     On August 7, 2015, Power Solutions filed its Quarterly Report on Form 10-Q for the second quarter ended June 30, 2015, with the SEC.  The Form 10-Q reaffirmed the above announced financial results and reaffirmed that the Company's "disclosure controls and procedures were effective."

72.     As a result of the above news, Power Solutions' stock fell more than 16% between August 5 and August 7, 2015, dropping from $40.11 per share to $33.59 per share, respectively.

73.     On October 28, 2015, Power Solutions preannounced its earnings for the third quarter of 2015.  In the announcement, defendant G. Winemaster touted that the Company's

"consolidated results reflect the highest quarterly sales in the history of [Power Solutions], with growth of approximately 18% from the second quarter." Defendant G. Winemaster admitted, however, that the quarter fell short of consensus estimates, and primarily attributed the problems to 3PI, stating that 3PI "is not yet performing to [Power Solutions'] expectations, and was the primary factor for the shortfall for the quarter relative to consensus estimates." Nonetheless, defendant G. Winemaster assured that Power Solutions "continue[d] to make progress toward integrating 3PI into [its] business, and expect[ed] to bring 3PI to a break-even run rate by year end."

74.    In the wake of the above announced shortfall, Power Solutions' stock price tumbled over 15.6%, from $21.36 per share on October 27, 2015, to $18.01 per share on October 29, 2015.

75.    On November 9, 2015, Power Solutions issued a press release announcing its already pre-announced third quarter 2015 results. The Company reported net sales for the quarter of $112,008,000, an increase of 19% from the third quarter of 2014 and an 18% sequential increase from the second quarter of 2015. Defendant G. Winemaster again bragged in the press release that the Company "recorded the highest quarterly revenue in [its] history," and further noted that despite near-term headwinds in Power Solutions' industry, "we have never been more enthusiastic about [the Company's] long-term outlook." The same day, Power Solutions filed its Quarterly Report on Form 10-Q for the third quarter ended September 30, 2015, with the SEC reaffirming the above announced financial results and assuring that the Company's "disclosure controls and procedures were effective."

76.    On February 22, 2016, the Company issued a press release announcing its fourth quarter and full year 2015 financial results. The Company reported net sales for the fourth

- 33 -

quarter of $96,670,000 compared to $103,910,000 in the fourth quarter of 2014. Despite the decrease for the quarter, the Company announced that net sales for the full year 2015 increased 12% from the previous year to $389,446,000.

77. On February 26, 2016, Power Solutions filed with the SEC its Annual Report on Form 10-K for the fiscal year ended December 31, 2015 (the "2015 Form 10-K"), signed by Officer Defendants G. Winemaster and Lewis, and Director Defendants G. Winemaster, Landini, Hansen, Hoffing, and Vogt, with signed SOX certifications by defendants G. Winemaster and Lewis. The 2015 Form 10-K reaffirmed the above announced financial results and again reassured the market that the Company's "disclosure controls and procedures were effective." Further, the 2015 Form 10-K again misrepresented the Company's revenue recognition policies, again claiming that revenue was properly recorded when collectability was reasonably assured, stating:

> *Revenue recognition*
>
> We recognize revenue upon transfer of title and risk of loss to the customer, which is typically when products are shipped, provided there is persuasive evidence of an arrangement, the sales price is fixed or determinable and management believes collectability is reasonably assured. As of December 31, 2015 and 2014, we had recognized revenue associated with approximately $21.4 million and $3.2 million, respectively, of undelivered product. We anticipate the collection of any unpaid balances during 2016. We did not enter into any bill and hold arrangements during 2013.

78. According to the Cohen Complaint (further discussed *supra*), during an April 28, 2016 Board meeting, defendant Cohen (the Company's now former Chief Operating Officer) provided an extensive presentation to the Board and Audit Committee, and explained that the Company had been engaged in an improper revenue "pull-forward" scheme, in violation of GAAP, SEC regulations, and the Company's own stated revenue recognition policies. Defendant Cohen further alleges that on May 5, 2016, defendant Cohen advised the Board in a letter that the

Company's stated financial guidance was unrealistic, and that the Company's operations were damaged "by stuffing the channel at the end of each quarter to make an artificial sales target."

79. On May 9, 2016, Power Solutions issued a press release announcing its first quarter 2016 results. The Company reported that net sales decreased to $61,814,000 compared to $86,139,000 in the first quarter of 2015. Nonetheless, despite defendant Cohen's April 28th warning to the Board that Power Solutions was plagued by revenue recognition improprieties, the press release reiterated revenue guidance previously provided, stating that Power Solutions "anticipates 2016 full year net sales to be in the range of $350 million to $375 million and expects to be profitable." Later the same day, during a conference call with investors, defendant G. Winemaster assured that the Company was "very enthusiastic about [its] outlook," reaffirmed Power Solutions "full-year guidance of revenue in the range of $350 million to $375 million," and boasted "confiden[ce] that [Power Solutions could] improve upon [its] results in the first quarter to meet [the Company's] full-year outlook for revenue and profitable results."

80. On May 10, 2016, Power Solutions filed its Quarterly Report on Form 10-Q for the first quarter ended March 31, 2016, with the SEC. The Form 10-Q reaffirmed the above announced financial results and reaffirmed that the Company's "disclosure controls and procedures were effective."

## THE TRUTH IS SLOWLY BUT ONLY PARTIALLY REVEALED

81. On August 4, 2016, Power Solutions cryptically announced that it was postponing its second quarter 2016 earnings release. According to the release, the Company needed "more time to finalize its quarterly financial results" and would "issue a press release announcing a rescheduled date for the earnings release and conference call."

82. On August 10, 2016, the Company announced that it intended to file with the SEC a Notification of Late Filing on Form 12b-25 with the SEC in connection with the Company's

filing of its Quarterly Report on Form 10-Q for the second quarter ended June 30, 2016. The announcement revealed that the Company "was unable to file [its Form 10-Q] within the prescribed due date of August 9, 2016."

83.     On August 15, 2016, Power Solutions announced further delays to its second quarter 2016 results. The announcement revealed that the cause of the delay was an "ongoing review of allegations made by a [then undisclosed] former employee," and that "[t]he review is primarily focused on certain transactions involving revenue recognition." The Company largely remained silent on the matter for the next few months.

84.     On November 17, 2016, Power Solutions announced that it received an additional notice from The Nasdaq Stock Market ("Nasdaq") on November 11, 2016, stating that the Company was not in compliance with Nasdaq Listing Rule 5250(c)(1) because it did not timely file its Quarterly Report on Form 10-Q for the third quarter ended September 30, 2016, with the SEC. The announcement further revealed that on or about November 7, 2016, Nasdaq granted the Company an exception to listing rules to file its Form 10-Q for the second quarter ended June 30, 2016, on or before February 6, 2017. The announcement did not provide any indication of when the Company expected to complete its review and file its belated financial statements.

85.     The above announcements sent Power Solutions' stock price on a downward spiral through the remainder of 2016. Indeed, due to the increasing uncertainty surrounding the Company's financials, Power Solutions' stock price steadily fell from $15.96 per share on August 3, 2016, the day before the Company first announced postponement of its financials, to close the year at just $7.50 per share on December 30, 2016.

86.     On January 5, 2017, the Company filed with the SEC a Current Report on Form 8-K announcing it would need to restate its financial statements for fiscal year 2015, the second,

third, and fourth quarters within 2015, and the first quarter of 2016. According to the Company, these financial statements needed to be restated to "reflect the impact of certain errors involving revenue recognition," and the errors reviewed to date included at least $18 million in revenue erroneously recognized in the Company's 2015 consolidated financial statements. Power Solutions further disclosed that it had been ***operating with a "material weakness in internal controls over financial reporting" during each of the above noted periods***, and that its previously filed financial statements for those periods "***should no longer be relied upon***." In addition, the announcement disclosed that the SEC's enforcement staff had informed the Company that it was investigating, among other things, Power Solutions' revenue recognition practices.

87.     On February 3, 2017, Power Solutions disclosed in its Current Report on Form 8-K filed with the SEC that it had received a letter on January 27, 2017 from RMS, its now-former independent registered public accounting firm. According to the announcement, RMS found that: "(i) there are material weaknesses in the Company's internal control over revenue recognition and, more broadly, in its overall control environment and (ii) ***RSM can no longer rely on management representations***." The following week, the Company appointed a new independent registered public accounting firm, Frazier & Deeter, LLC ("Frazier").

88.     In another Current Report on Form 8-K filed with the SEC on April 7, 2017, Power Solutions disclosed that it would be forced to restate additional financial periods, including fiscal year 2014 and the first quarter of 2015. The Company further estimated that its restatements for 2014 through 2016 would "result in a shift of recognized revenues from prior periods to subsequent periods in the aggregate amount of approximately $48 million to $74 million." In addition, the announcement revealed that defendant G. Winemaster resigned as

CEO, President, and a member of the Board.

89.     On June 9, 2017, defendant Cohen filed the Cohen Complaint against Power Solutions in this Court.  The Cohen Complaint sheds some light on the Company's long-standing improper revenue recognition scheme and alleges defendant Cohen was terminated for retaliation after he purportedly discovered and internally reported rampant violations of GAAP, SOX, and federal securities laws.  According to the Cohen Complaint, in or about the first quarter of 2016, while the Company was experiencing a cash shortage and dramatic revenue fluctuations, defendant Cohen discovered that Power Solutions was manufacturing phony transactions to inflate revenue and sales figures, including by "pulling-forward" sales from future quarters that should not have been recognized at the time.  According to defendant Cohen, Power Solutions was also "manufacturing units as part of sham transactions in order to fraudulently inflate revenue and sales figures, thus misleading [the Company's] auditors, investors, regulators, analysts, and employees," and the "units from these sham transactions would either go unsold or be subject to sales terms that would generate little-to-no margin, or potentially even a loss."  The Cohen Complaint further specifically identified several multimillion-dollar "sham transactions," but notes that when he first raised these issues with several members of senior management, including defendant G. Winemaster, his concerns were met with contempt and inaction.  As a result, defendant Cohen escalated the matter and reported the issues to the full Board and Audit Committee on several occasions, including in person during an April 28, 2016 Board meeting and also via several follow-up letters.  According to defendant Cohen, he was terminated in May 2016 as a result of his persistent attempts to address the Company's widespread wrongdoing. Although the Cohen Complaint remains pending and certain allegations are contested by the Company, the fact that Power Solutions' financial statements were misstated for *years* due to

errors in revenue recognition is undisputed.

90.    To date, Power Solutions still has not completed its restatements for the fiscal year ended December 31, 2014, the fiscal year ended December 31, 2015, the fiscal quarters within such fiscal years, and the first quarter ended March 31, 2016, and the Company has not filed Annual or Quarterly Reports on Forms 10-K or Forms 10-Q since May 2016, nearly two years ago.  Nor has the Company provided any estimates as to when any of these filings or restatements are likely to be completed, and there appears to be no end in sight.  Most recently, on March 14, 2018, the Company dismissed Frazier, its barely one-year-old public accounting firm that previously replaced RSM after RSM quit, and replaced Frazier with BDO USA, LLP. A few days later, on March 19, 2018, the Company filed a Notification of Late Filing on Form 12b-25 with the SEC, disclosing that Power Solutions is "unable to complete its financial statements and file its Annual Report on Form 10-K for the year ended December 31, 2017 by the prescribed due date for such filing," unhelpfully adding that the Company plans to file the Form 10-K "as soon as practicable following the completion of the restatements."

### REASONS THE STATEMENTS WERE IMPROPER

91.    The statements referenced above were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing:

        (a)    the Company was improperly recording revenue in violation of GAAP and its own revenue recognition policies for years;

        (b)    the Company was overstating its revenue for years;

        (c)    for years the Company lacked adequate financial and internal controls; and

(d)      as a result of the foregoing, several years of representations concerning the Company's revenue, impressive revenue growth, and business prospects were improper.

### DEFENDANTS REFUSE TO HOLD AN ANNUAL MEETING OF STOCKHOLDERS AS REQUIRED BY LAW

92.      Under section 2.2 of the Company's Amended and Restated Bylaws, "*[a]nnual meetings of stockholders shall be held*" each year on a date and at a time designated by the Board, "at which stockholders shall elect directors to hold office."  Further, Section 211 requires an Annual Meeting of Stockholders to be held within thirteen months of the previous meeting.

93.      To date, the Company still has not held its Annual Meeting of Stockholders for 2017 or for 2018.  In fact, the last time the Company held its Annual Meeting of Stockholders was on April 28, 2016, almost two years ago.  Thus, Power Solutions is in violation of its Bylaws, Section 211, and the Company's stockholders have been wrongfully denied their important rights to voice their frustrations at an annual meeting or by withholding their votes for the directors that have breached their fiduciary duties.

### DAMAGES TO POWER SOLUTIONS

94.      As a result of the Individual Defendants' improprieties, Power Solutions disseminated improper, public statements concerning the Company's financial success, compliance with GAAP, internal controls, and business forecasts.  These improper statements have devastated Power Solutions' credibility as reflected by the Company's more than *$841 million*, or *92% market capitalization loss* from its May 2014 high to the present.

95.      Power Solutions' performance issues also damaged its reputation within the business community and in the capital markets.  In addition to price, Power Solutions' current and potential customers consider a company's ability to timely file its financial results, accurately value its revenues, and evaluate its own financial results and growth.  Businesses are less likely

to award contracts to companies that violate GAAP, are uncertain about their own financial conditions, and terminate whistleblowers that raise serious concerns about unsound financial conditions. Power Solutions' ability to raise equity capital or debt on favorable terms in the future is now impaired. In addition, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections disseminated by the Individual Defendants have materially increased the perceived risks of investing in and lending money to the Company.

96. Further, as a direct and proximate result of the Individual Defendants' actions, Power Solutions has expended, and will continue to expend, significant sums of money. Such expenditures include, but are not limited to:

(a) costs incurred from defending and paying any settlement in the Securities Class Action for violations of federal securities laws;

(b) costs incurred from defending and paying any settlement in the whistleblower action brought by defendant Cohen;

(c) costs incurred from investigating years of financial wrongdoing;

(d) costs incurred from restating several years' worth of financial results; and

(e) costs incurred from compensation and benefits paid to the defendants who have breached their duties to Power Solutions.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

97. Plaintiff brings this action derivatively in the right and for the benefit of Power Solutions to redress injuries suffered, and to be suffered, by Power Solutions as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. Power Solutions is named as a nominal

defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

98. Plaintiff will adequately and fairly represent the interests of Power Solutions in enforcing and prosecuting its rights.

99. Plaintiff was a stockholder of Power Solutions at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Power Solutions stockholder.

100. The current Board of Power Solutions consists of the following seven individuals: defendants Sun, Landini, Kui, Lin, Coolidge, and Simpkins, and nondefendant Huisheng Liu. Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because Defendants Sun, Landini, Kui, Lin, Coolidge, and Simpkins Face a Substantial Likelihood of Liability for Their Misconduct**

101. As alleged above, defendants Sun, Landini, Kui, Lin, Coolidge, and Simpkins breached their fiduciary duties by causing or allowing the Company by failing for almost two years and continuing to fail to ensure the Company holds an Annual Meeting of Stockholders, which is required by law and by the Company's Bylaws to be held each year. By refusing to designate a date or time for an annual meeting of Power Solutions stockholders, the entire Board is improperly entrenching itself and wrongfully refusing Power Solutions' stockholders' rights to elect directors.

102. Defendants Sun, Landini, Kui, Lin, Coolidge, and Simpkins further breached their fiduciary duties by causing or allowing the Company to continue to operate with inadequate controls, failing to ensure timely restatement of several years' worth of the Company's financial statements, and failing to ensure the timely filing of any of Power Solutions' financial statements

since May 2016.

103.    Plaintiff has not made any demand on the other stockholders of Power Solutions to institute this action since such a demand would be a futile and useless act for the following reasons:

(a)    Power Solutions is a publicly held company with over 10.8 million shares outstanding as of May 5, 2016, and thousands of stockholders;

(b)    making a demand on such a number of stockholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of stockholders; and

(c)    making demand on all stockholders would force plaintiff to incur excessive expenses, assuming all stockholders could be individually identified.

## COUNT I

### Directly Against Defendants Sun, Landini, Kui, Lin, Coolidge, and Simpkins to Compel an Annual Meeting of Stockholders

104.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

105.    Pursuant to Section 211, Power Solutions is required to hold an Annual Meeting of Stockholders at least once every thirteen months.

106.    Power Solutions' last annual meeting was held on April 28, 2016.

107.    Section 2.2 of Power Solutions' Amended and Restated Bylaws provides that the [a]nnual meetings of stockholders shall be held" each year on a date and at a time designated by the Board, "at which stockholders shall elect directors to hold office."

108.    In violation of the Bylaws and Delaware law, the Board has not designated a date or time for an Annual Meeting of Stockholders for nearly two years.

109.     As a result of the Individual Defendants' wrongdoing, the Director Defendants have failed to timely cause Power Solutions to hold an Annual Meeting of Stockholders to elect directors, and there has been no action by written consent to elect Power Solutions directors in lieu of an Annual Meeting.

110.     To remedy defendants Sun, Landini, Kui, Lin, Coolidge, and Simpkins' decision to cause Power Solutions' foregoing violation of Delaware law and the Company's Bylaws, the Court should order the Board to promptly schedule, provide notice of, and hold an Annual Meeting of Stockholders.

## COUNT II

**Derivatively Against the Individual Defendants for Breach of Fiduciary Duty**

111.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

112.     The Individual Defendants owed and owe Power Solutions fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Power Solutions the highest obligation of good faith, fair dealing, loyalty, and due care.

113.     The Individual Defendants and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.  More specifically, the Individual Defendants violated their duty of good faith by creating a culture of lawlessness and improper "tone at the top" within Power Solutions, and/or consciously failing to prevent the Company from engaging in the unlawful acts complained of herein.

114.     The Officer Defendants either knew, were reckless, or were grossly negligent in disregarding the illegal activity of such substantial magnitude and duration.  The Officer Defendants either knew, were reckless, or were grossly negligent in not knowing: (i) for years

- 44 -

the Company was improperly recording nonmonetary revenue in violation of GAAP; (ii) for years the Company was overstating its revenue; (iii) for years the Company lacked adequate financial and internal controls; and (iv) as a result of the foregoing, several years of representations concerning the Company's revenue, impressive revenue growth, business prospects, and financial controls were improper. The Officer Defendants further breached their fiduciary duty of candor by failing to ensure the timely restatement of several years' worth of the Company's financial statements, and failing to ensure the filing of any of Power Solutions' financial statements since May 2016. Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

115.    Director Defendants, as directors of the Company, owed Power Solutions the highest duty of loyalty. These defendants breached their duty of loyalty by recklessly permitting the Company to violate GAAP and overstate its revenue for years. The Director Defendants knew or were reckless in not knowing that: (i) for years the Company was improperly recording nonmonetary revenue in violation of GAAP; (ii) for years the Company was overstating its revenue; (iii) for years the Company lacked adequate financial and internal controls; and (iv) as a result of the foregoing, several years of representations concerning the Company's revenue, impressive revenue growth, business prospects, and financial controls were improper. The Director Defendants further breached their fiduciary duty of candor by failing to ensure the timely restatement of several years' worth of the Company's financial statements, and failing to ensure the filing of any of Power Solutions' financial statements since May 2016. Accordingly, the Director Defendants breached their duty of loyalty to the Company.

116.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Power Solutions has sustained significant damages, as alleged herein. As a

result of the misconduct alleged herein, these defendants are liable to the Company.

117.    Plaintiff, on behalf of Power Solutions, has no adequate remedy at law.

## COUNT III

**Derivatively Against the Individual Defendants for Waste of Corporate Assets**

118.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

119.    As a result of the Individual Defendants' wrongdoing detailed herein and by failing to conduct proper supervision, the Individual Defendants have caused Power Solutions to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

120.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

121.    Plaintiff, on behalf of Power Solutions, has no adequate remedy at law.

## COUNT IV

**Derivatively Against the Individual Defendants for Unjust Enrichment**

122.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

123.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Power Solutions.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Power Solutions.

124.    Plaintiff, as a stockholder and representative of Power Solutions, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits,

benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

125.     Plaintiff, on behalf of Power Solutions, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Power Solutions, demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.     Ordering defendants to provide to plaintiff and the investing public accurate operational reports and financial statements for all previous quarters and years identified by the Audit Committee as inaccurate;

C.     Ordering defendants to take whatever measures are reasonably necessary to ensure they publish timely and accurate operational reports and financial statements for all quarterly and annual periods going forward;

D.     Ordering defendants to convene and hold Power Solutions' Annual Meeting of Stockholders no later than sixty days from the date of this Court's Order and designating the time and place of the Annual Meeting, as well as the form and timing of notice to be provided to Power Solutions' stockholders;

E.     Directing Power Solutions to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Power Solutions and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be

necessary to place before stockholders for a vote of the following corporate governance policies:

   1. a proposal to strengthen the Company's controls over financial reporting;

   2. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

   3. a provision to permit the stockholders of Power Solutions to nominate at least three candidates for election to the Board; and

   4. a proposal to strengthen Power Solutions' oversight of its disclosure procedures;

  F. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Power Solutions has an effective remedy;

  G. Awarding to Power Solutions restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

  H. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

  I. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 3, 2018

**MORRISSEY & DONAHUE, LLC**


By: ____/s/ Charles F. Morrissey_____
CHARLES F. MORRISSEY (IL 6243531)
DARNELL R. DONAHUE (IL 6304720)
CASSIE R.S. STOCKERT (IL 6314081)
200 E. Randolph St., Suite 5100
Chicago, IL 60601
Telephone: (312) 967-1200
Facsimile: (312) 896-5959
E-mail: cfm@morrisseydonahue.com
     drd@morrisseydonahue.com
     crss@morrisseydonahue.com


**ROBBINS ARROYO, LLP**
BRIAN J. ROBBINS
STEPHEN J. ODDO
JENNY L. DIXON
ERIC M. CARRINO
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: 619) 525-3991
E-mail: brobbins@robbinsarroyo.com
     soddo@robbinsarroyo.com
     jdixon@robbinsarroyo.com
     ecarrino@robbinsarroyo.com


*Attorneys for Plaintiff, MICHAEL MARTIN,*
*Derivatively on Behalf of POWER*
*SOLUTIONS INTERNATIONAL, INC.*

## VERIFICATION

I, Michael Martin, hereby declare as follows:

I am the plaintiff in the within entitled action. I have read the Verified Stockholder Derivative Complaint to Compel an Annual Meeting of Stockholders, Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: MARCH 30, 2018

_____
MICHAEL MARTIN